959 P.2d 792

Dennis V. O'DAY, Plaintiff.

v.

McDONNELL DOUGLAS HELICOPTER
COMPANY, a foreign corporation,
Defendant.

No. CV–97–0274–CQ.

Supreme Court of Arizona,
En Banc.

May 26, 1998.

Francis G. Fanning, Tempe, for Dennis V. O'Day.

Snell & Wilmer, L.L.P. by Tibor Nagy, Jr., Tucson, for McDonnell Douglas Helicopter Company.

## OPINION

MARTONE, Justice.

¶ 1 The United States District Court for the District of Arizona certified two questions on the proper use of after-acquired evidence in employment termination disputes. We accepted jurisdiction under A.R.S. § 12–1861, and Rule 27, Rules of the Supreme Court.

### I. CERTIFIED FACTS

¶ 2 On June 8, 1990, McDonnell Douglas failed to promote Dennis O'Day to lead engineer at its helicopter plant in Mesa. He was laid off as part of a general work force reduction one month later. O'Day was 46 years old, had worked for the company for fourteen years, and believed he had been denied the promotion and laid off because of his age.

¶ 3 After exhausting his administrative remedies in the Equal Employment Opportunity Commission, O'Day filed an action against McDonnell Douglas challenging the denial of promotion and layoff. His complaint stated four causes of action:

1. Discrimination in employment under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*
2. Discrimination in employment under the Arizona Civil Rights Act, A.R.S. § 41–1481 *et seq.*
3. Breach of contract.
4. Wrongful discharge in violation of public policy.

¶ 4 The night after O'Day was denied his promotion, he returned to the plant and searched his supervisor's office. He took documents that he thought might be useful to his discrimination claim, copied them, and returned the originals to the supervisor's desk.

¶ 5 It was not until after discovery began in the action that McDonnell Douglas learned of O'Day's misconduct. McDonnell Douglas moved for summary judgment, asserting the "after-acquired evidence defense." The District Court granted judgment in favor of McDonnell Douglas on all counts.

¶ 6 On appeal, the United States Court of Appeals for the Ninth Circuit affirmed the finding that the after-acquired evidence defense had been established, but reversed the dismissal of the complaint based upon the principles articulated in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756 (9th Cir.1996). The Court of Appeals remanded the case for trial but reserved ruling on whether the "after-acquired evidence" defense applied to O'Day's state contract and tort claims. The court noted that we had not yet "determined the extent to which after-acquired evidence of wrongdoing limits an employee's recovery of compensatory and punitive damages on these causes of action." *Id.* at 764 n. 7.

### II. CERTIFIED QUESTIONS

The certified questions are:

1. Whether the "after-acquired evidence" defense as delineated by the United States Supreme Court in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) applies to limit recovery under Arizona law in a case of wrongful discharge from employment in violation of public policy, and, if the defense applies, how it limits or precludes recovery of damages.
2. Whether the "after-acquired evidence" defense applies in a case of breach of employment contract, and, if the defense applies, how it limits or precludes recovery of damages in such a case.

### III.

A. **After–Acquired Evidence in Federal Statutory Discrimination Cases: the *McKennon* Rule**

¶ 7 *McKennon* resolved a conflict in the circuits on the proper role of after-acquired

evidence in federal statutory discrimination cases. The Tenth Circuit, in *Summers v. State Farm Automobile Insurance Co.*, 864 F.2d 700 (10th Cir.1988), had held that after-acquired evidence could serve as a complete bar to a plaintiff's cause of action under federal employment discrimination statutes if the defendant could demonstrate that the conduct would have resulted in the employee's discharge had it been discovered during the course of employment. The court presented a hypothetical that is often quoted in after-acquired evidence cases:

> To argue, as Summers does, that this after-acquired evidence should be ignored is utterly unrealistic. The present case is akin to the hypothetical wherein a company doctor is fired because of his age, race, religion, and sex and the company, in defending a civil rights action, thereafter discovers that the discharged employee was not a "doctor." In our view, the masquerading doctor would be entitled to no relief, and Summers is in no better position.

*Id.* at 708. Four years later, the Eleventh Circuit, in *Wallace v. Dunn Construction Co.*, 968 F.2d 1174 (11th Cir.1992), *reh'g granted, op. vacated,* 32 F.3d 1489 (11th Cir. 1994), *decision en banc,* 62 F.3d 374 (11th Cir.1995), rejected this approach, and concluded that after-acquired evidence, while relevant, should operate only to limit damages. *Id.* at 1181. The court held that after-acquired evidence sufficient to warrant discharge precludes reinstatement or front pay. *Id.* The plaintiff's award of back pay would be reduced to the period between the actual discharge and the discovery of the evidence only if the employer could demonstrate that (1) the misconduct discovered would have resulted in the plaintiff's discharge and (2) the evidence would have been discovered in the absence of the alleged discrimination and the subsequent litigation. *Id.* at 1182.

¶ 8 The Supreme Court resolved the conflict in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), and held that after-acquired evidence is not a bar to an employment discrimination action, but is relevant to the measure of damages. The Court's resolution reflected a balancing of the legitimate managerial interests of the employer and the "important claims of the employee who invokes the national employment policy mandated by the Act." *Id.* at 361, 115 S.Ct. at 886. The Court held that once an employer demonstrates that the after-acquired evidence would have led to the employee's discharge, the remedies of reinstatement and front pay are no longer appropriate. The Court concluded that the measure of back pay is the period between the termination and the date the employer discovers the after-acquired evidence. The Court expressly rejected the added prong of *Wallace,* and held that an employer need not show that it would have discovered the evidence in the absence of discrimination and subsequent litigation.

## B. After–Acquired Evidence and State Common Law Claims

¶ 9 The question here is whether we should apply the *McKennon* rule to O'Day's state common law claims for breach of contract and wrongful termination in violation of public policy. As to the contract claim, O'Day argues that (1) employee misconduct after a valid employment relationship exists ought to be treated differently than a case of résumé or application fraud, which implicates the doctrine of fraud in the inducement, (2) this court ought to consider how material O'Day's misconduct was to the contractual relationship, and (3) after-acquired evidence should only affect damages, not liability.

¶ 10 As to the tort claim, O'Day argues, *inter alia,* that any limitation on damages resulting from the admission of after-acquired evidence would violate both article II, section 31 and article XVIII, section 6 of our Constitution, which prohibit laws that limit the amount of damages to be recovered for injuries. O'Day also argues that the cutoff date for future lost earnings should not be the date the employer discovers the misconduct, but instead should be a date determined by a jury. Finally, O'Day argues that after-acquired evidence should have no bearing on punitive damages, or on compensatory damages for injury to personal and professional reputation, emotional distress, humiliation, and embarrassment.

¶ 11 McDonnell Douglas argues that the contract claim and the tort claim ought to be treated differently. It relies on *Hampton v. Sandy Cowen Agency, Inc.*, 154 Ariz. 14, 739 P.2d 1331 (App.1987) and the *Restatement (Second) of Contracts* § 385 (1979) for the proposition that if a party has the power to avoid a contract by disaffirmance, that party's failure to perform is not a breach, even if the party is ignorant of his power of avoidance and believes that his refusal is a breach. The after-acquired evidence of O'Day's misconduct would, under this rule, constitute a "first breach" of the employment contract that would excuse McDonnell Douglas's later breach. The *McKennon* rule would not apply, because the purposes behind state and federal age discrimination statutes do not form the underpinnings of the law of contracts.

¶ 12 In contrast, McDonnell Douglas concedes that because the tort claim involves important public concerns, like those implicated by federal and state discrimination statutes, there is no bar. It argues that the *McKennon* rule should apply as to reinstatement, front pay and back pay, but that after-acquired evidence of employee misconduct ought to be a *per se* bar to the recovery of punitive damages and emotional distress damages.

1. Common Law Breach of Contract and After–Acquired Evidence

¶ 13 The overwhelming majority of courts hold that if an employer can demonstrate that it would have fired an employee had it known of prior misconduct, then the employee's claim for breach of contract is barred or, put differently, the prior misconduct excuses the employer's breach. This approach is supported by several sections of the *Restatement of Contracts*, leading treatises, and a century of case law. In *Hampton v. Sandy Cowen Agency*, 154 Ariz. 14, 739 P.2d 1331 (App.1987), the court of appeals held that a former employee's breach of contract claim was barred by the discovery of after-acquired evidence such that, had it been known at the time of employment, the employee would not have been hired. Relying upon the *Restatement (Second) of Con-*

*tracts* § 385 cmt. a (1979), the court rejected the plaintiff's claim that the employer could not rescind the contract if it did not know of the grounds for rescission at the time of the plaintiff's discharge. The irrelevance of the second breaching party's ignorance is reinforced by other sections of the *Restatement*. Section 237 provides:

> Except as stated in § 240, it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time.

Illustration 8 to section 237 is directly on point:

> A and B make an employment contract. After the service has begun, A, the employee, commits a material breach of his duty to give efficient service that would justify B in discharging him. B is not aware of this but discharges A for an inadequate reason. A has no claim against B for discharging him.

*See also* E. Allan Farnsworth, *Farnsworth on Contracts* § 8.3 (1990). The Supreme Court, pre-*Erie*, acknowledged this in *College Point Boat Corp. v. United States*, 267 U.S. 12, 15–16, 45 S.Ct. 199, 201, 69 L.Ed. 490 (1925) (holding that a party may "justify an asserted termination, rescission, or repudiation of a contract by proving that there was adequate cause, though it was not known to him until later.").

¶ 14 The Colorado and Kansas Supreme Courts have recently held that after-acquired evidence of employee misconduct that would have resulted in termination (or the employee never having been hired) bars a claim for breach of contract. *Crawford Rehab. Servs. v. Weissman*, 938 P.2d 540 (Colo.1997); *Gassmann v. Evangelical Lutheran Good Samaritan Soc'y*, 261 Kan. 725, 933 P.2d 743 (1997). Federal courts have reached the same conclusion as to pendant state claims. *See, e.g., Johnson v. Honeywell Info. Sys.*, 955 F.2d 409, 412–14 (6th Cir.1992), *questioned on other grounds, McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995); *Massey v. Trump's Castle Hotel & Casino*, 828

F.Supp. 314, 325 (D.N.J.1993); *Leahey v. Federal Express Corp.*, 685 F.Supp. 127, 128 (E.D.Va.1988).

¶ 15 Under the law of contracts, O'Day's claim that McDonnell Douglas breached the implied contract by terminating him is barred if McDonnell Douglas can demonstrate that it would have fired him had it known of the misconduct. Of course, O'Day's breach of contract claim arising out of his employer's conduct *prior to* O'Day's misconduct (failure to promote) is not barred because this would be a first breach by the employer, not the employee. To this day, almost no court has challenged the assumption that these principles ought to apply to implied-in-fact employment contracts. *But see, Crawford Rehab. Servs. v. Weissman,* 938 P.2d 540, 553 (Colo.1997), (Mullarkey, J., dissenting).

¶ 16 We adhere to the traditional contract approach. We need not depart from the law of contracts just to duplicate relief that is already provided by tort and statutory causes of action that arose *because of* the possible harshness of the very contract principles before us today. The result in contract merely reflects the private bargain between the parties. Of course, if the employee can demonstrate that the employer knew of the misconduct and chose to ignore it, then he will defeat the employer's attempted use of the after-acquired evidence and defense of legal excuse.

¶ 17 We emphasize that the non-breaching party is discharged only from its *remaining* duties of performance. *Restatement (Second) of Contracts* § 237 (1979). For example, in a unilateral contract for employment, where a day's work results in a day's wages, an employer would, in most cases, still be obligated to provide wages and benefits for services rendered up to the moment of termination. We also believe that principles of equity would prevent the absurd results identified by opponents of the traditional contract approach. In almost all imaginable circumstances, the doctrines of *quantum meruit* and unjust enrichment would prevent an employer from using past wrongdoing to recover wages already paid to an employee. We therefore hold that after-acquired evidence of employee misconduct is a defense to a breach of contract action for wages and benefits lost as a result of discharge if the employer can demonstrate that it would have fired the employee had it known of the misconduct.

### 2. Tortious Wrongful Termination and After–Acquired Evidence

¶ 18 Other courts have adopted three approaches to after-acquired evidence in wrongful termination cases: (1) it is not admissable because it is irrelevant or because it undermines the public policy goals of these actions (*see Flanigan v. Prudential Fed. Sav. & Loan,* 221 Mont. 419, 720 P.2d 257, 264 (1986), *appeal dismissed,* 479 U.S. 980, 107 S.Ct. 564, 93 L.Ed.2d 570 (1986); *Mosley v. Truckstops Corp.,* 891 P.2d 577, 585 (Okla. 1993); *Mitchell v. John Wiesner, Inc.,* 923 S.W.2d 262, 264 (Tex.App.1996)); (2) it is an absolute bar to recovery by the employee (*see Camp v. Jeffer, Mangels, Butler & Marmaro,* 35 Cal.App.4th 620, 41 Cal.Rptr.2d 329, 335–40 (1995); *Jordan v. Johnson Controls, Inc.,* 881 S.W.2d 363, 366 (Tex.App. 1994)); and (3) it only limits remedies.

¶ 19 We reject the first approach because, while it has surface appeal, it cannot be reconciled with the employer's right to let an employee go for the employee's wrongful conduct. *See Thompson v. Better–Bilt Aluminum Prods. Co.,* 187 Ariz. 121, 129, 927 P.2d 781, 789 (App.1996). We reject the second approach because the tort claim evolved to cure the failure of the law of contracts to attribute any consequence to the employer's tortious conduct. The third approach attributes significance to both the employer's and employee's wrongful conduct. *See generally* Rebecca Hanner White & Robert D. Brussack, *The Proper Role of After–Acquired Evidence in Employment Discrimination Litigation,* 35 B.C. L.Rev. 49 (1993).

¶ 20 But does the *McKennon* rule (back pay up to discovery, but no reinstatement or front pay) strike the proper balance between the interests of employers and employees in cases of tortious wrongful discharge? In part. We think that the prohibition on reinstatement and front pay adequately protects

the employer from an employee it has a right to fire. A contrary conclusion would lead to the absurd result that an employer would have to accept an employee and then discharge him. And, the unavailability of these remedies is caused by the employee's own conduct, not the tortious conduct of the employer. But back pay alone up to discovery of misconduct does not always adequately protect the employee from all the consequences of the employer's wrongful conduct. Tortious conduct should result in the tort measure of damages—compensatory and punitive, if justified by the evidence, and we have so held with respect to the tort of wrongful discharge. *See Thompson v. Better–Bilt Aluminum Prod.,* 171 Ariz. 550, 554, 832 P.2d 203, 207 (1992) (holding that a tortious wrongful discharge plaintiff is entitled "to ordinary tort damages—all damages legally caused by the tort.").

¶ 21   We acknowledge that the use of after-acquired evidence presents some policy concerns first raised by federal courts which rejected earlier decisions that had allowed after-acquired evidence to bar discrimination claims. *See, e.g., Wallace v. Dunn Constr. Co.* 968 F.2d 1174, 1180–81 (11th Cir.1992); *Massey v. Trump's Castle Hotel & Casino,* 828 F.Supp. 314, 323 (D.N.J.1993). It is feared that employers and their lawyers will scour the employee's work record and interview co-workers in an attempt to dig up on-the-job misconduct that will serve as a pretext for discharge. Or, an employer might ignore employee wrongdoing, but tuck away that knowledge for the day that a charge of discrimination is made. Finally, an employee might endure repeated harassment or discrimination without complaint because she knows that her work record is not spotless.

¶ 22   But these fears arose in the context of after-acquired evidence being a complete bar. Under our rule compensatory and punitive damages are available. Thus, the incentive to abuse this defense, and the consequence to the employee of such abuse, is greatly diminished.

¶ 23   Second, we believe our rule provides an employee with more protection than is at first apparent. *See* White & Brussack, *supra,* at 85–86. The question of remedy will arise only in cases in which the employer has already been found liable for wrongful conduct. Therefore, an employer that has already failed to convince a jury that it has not engaged in prohibited conduct must now convince that same jury that it would have fired this employee had it known of prior misconduct. This should discourage employers from adopting "ludicrously low thresholds," *Wallace,* 968 F.2d at 1180, for terminations that are pretextual.

¶ 24   Finally, the stakes are high for employers and their lawyers who would abuse the process. An employer that feigns ignorance of prior misconduct, hides evidence, or asserts in bad faith that it would have fired the employee had it known, is subject to discovery and other sanctions, as well as the specter of perjury charges. The lawyers involved are subject to the Rules of Professional Conduct. While it is impossible to fashion a rule that will entirely eliminate the possibility of abuse, we cannot allow these fears, as yet unrealized, to drive the development of the law. Our approach reaches a fair balance of legitimate interests. To yield completely to these fears by holding all after-acquired evidence irrelevant cannot be reconciled with an employer's right to discharge such an employee. Of course, if our estimate of the danger of abuse proves too optimistic, the matter can be revisited.

¶ 25   We hold that, in an action in tort, after-acquired evidence will only affect the remedies available to the employee. If an employer can demonstrate that it would have fired the employee had it known of the misconduct, then the remedy of reinstatement or its functional equivalent, front pay, will not be available. Damages for lost past earnings (sometimes referred to as "back pay") will be available for the period between the time of discharge and the time the employer discovers the misconduct. However, after-acquired evidence does not affect other compensatory damages attributable to the employer's wrongful conduct, including any decrease in earning capacity, and punitive damages, if they are otherwise warranted by the evidence.

¶ 26   We briefly turn to a distinction between front pay and other prospective dam-

ages. O'Day argues that any limitation on front pay ought not to apply to the common law remedy of lost future earnings. The term "front pay" arose from federal statutory employment discrimination law, and is a monetary substitute for the equitable remedy of reinstatement. Lost earnings, past or future, refer to those specific earnings that could have been earned but were not, such as earnings from an existing job. *See* 2 Dan B. Dobbs, *Law of Remedies* § 8.1(2), at 364 (2d ed.1993). Some courts have therefore defined front pay as "lost future earnings." *See Burris v. City of Phoenix,* 179 Ariz. 35, 38 n. 3, 875 P.2d 1340, 1343 n. 3 (App.1993)(citing *Hansard v. Pepsi–Cola Metro. Bottling Co.,* 865 F.2d 1461, 1469 (5th Cir.1989) and *Worrell v. Multipress, Inc.,* 45 Ohio St.3d 241, 543 N.E.2d 1277, 1283 (1989)).

¶ 27 Other courts believe the two to be separate remedies. *See, e.g., Williams v. Pharmacia, Inc.,* 137 F.3d 944 (7th Cir.1998). This disagreement may stem from a blurring of the distinction between lost *earnings* on the one hand, and lost or diminished earning *capacity* on the other. *See Williams,* 137 F.3d at 953 (holding that lost future earnings compensate the employee for a lifetime of diminished earnings resulting from the reputational harms the employee suffered as a result of the employer's discrimination). Properly understood, lost or diminished earning capacity, as distinguished from lost future earnings, is an estimate of lost present ability to work in appropriate occupations, now and in the future. *See* Dobbs, *supra,* § 8.1(2), at 362; *Rossell v. Volkswagen of America,* 147 Ariz. 160, 172, 709 P.2d 517, 529 (1985)(holding that diminished earning capacity is an item of general damage, as distinguished from lost earnings, which are specific damages); *Mandelbaum v. Knutson,* 11 Ariz.App. 148, 149–50, 462 P.2d 841, 842–43 (1969).

¶ 28 In the ordinary tort case, where the plaintiff is injured by someone other than his employer, his damages include lost earnings to date and any decrease in earning power or capacity in the future. *See, e.g., RAJI* (Civil) 112 (3d ed. 1997) (Personal Injury Damages 1). In the employment context, where the tortfeasor is the employer, and where there is a finding in favor of the employer on the after-acquired evidence defense, the employer's right to discharge affects the ordinary measure of damages as of the date the right to discharge arises. Thus, the plaintiff is entitled to lost earnings to the point of discovery rather than to date. And, because the employer has the right to discharge, reinstatement or its functional equivalent, front pay, cannot be reconciled with the employer's right to fire. Thus lost future earnings from that specific employer are not available. But the employer's conduct may have damaged the employee in other ways, and thus the employee is still entitled to general damages for diminished earning capacity if supported by the evidence, even where he is not entitled to lost future earnings.

¶ 29 O'Day's argument that allowing after-acquired evidence to limit damages is unconstitutional is without merit. Both article II, section 31 and article XVIII, section 6 by their express language prohibit "enacted"[1] and "statutory"[2] limitations on the amount of damages. This, of course, is not a case of statutory limitation. Second, and perhaps more important, under our rule the employee is entitled to the full measure of tort damages, including any decrease in earning power or capacity in the future. The unavailability of front pay or lost future wages from that specific employer flows from the unavailability of reinstatement, which in turn flows from the employee's own conduct, *see Jimenez v. Sears Roebuck & Co.,* 183 Ariz. 399, 408, 904 P.2d 861, 870 (1995), not from any law limiting damages caused by the tortfeasor.

1. Article II, section 31 provides: "No law shall be *enacted* in this State limiting the amount of damages to be recovered for causing the death or injury of any person" (emphasis added).

2. Article XVIII, section 6 provides: "The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any *statutory* limitation" (emphasis added).

## IV. ANSWERS

A. We answer question two that after-acquired evidence of employee misconduct is a defense to a breach of contract action for wages and benefits lost as a result of discharge if the employer can demonstrate that it would have fired the employee had it known of the misconduct.

B. We answer question one that after-acquired evidence of employee misconduct is not a defense to a tortious wrongful termination action, but is relevant to the question of remedies. If an employer can demonstrate that it would have fired an employee had it known of prior misconduct, then the remedies of reinstatement and front pay will not be available to the employee. The employee is entitled to lost earnings from the time of discharge to the time the employer discovers the misconduct. However, after-acquired evidence is no bar to other compensatory damages attributable to the employer's wrongful conduct, including but not limited to diminished earning capacity and punitive damages, if otherwise warranted by the evidence.

ZLAKET, C.J., and JONES, V.C.J., and FELDMAN and TOCI, JJ., concur.

JAMES MOELLER, J. (retired) did not participate in the determination of this matter. Pursuant to Art. 6, § 3 of the Arizona Constitution, Judge Philip E. Toci, Chief Judge of the Arizona Court of Appeals, Division One, is designated to sit on this case until final determination of this matter.