**Jay SCHIAVELLO, Plaintiff,**

v.

**DELMARVA SYSTEMS CORPORATION, Defendant.**

**Civil Action No. 98–191–LON.**

United States District Court,
D. Delaware.

June 29, 1999.

Randall C. Schauer, and Lance J. Nelson, MacElree, Harvey, Gallagher, Featherman & Sebastian, West Chester, PA, for plaintiff.

Sheldon N. Sandler, and Scott A. Holt, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for defendant.

## MEMORANDUM OPINION

LONGOBARDI, Senior District Judge.

## I. INTRODUCTION

Plaintiff, Jay Schiavello, filed this action alleging that defendant, Delmarva Systems Corporation ("DSC"), breached his employment agreement and violated the Delaware Wage Payment and Collection Act.[1] The Complaint alleges that DSC breached the agreement by failing to allow him a reasonable opportunity to earn an incentive bonus, as stated in the agreement. (Docket Item "D.I." 1). Plaintiff claims that under the agreement, he is entitled to four years of severance pay, approximately $344,000, because of defendant's failure to allow him a reasonable opportunity to earn an incentive bonus. Additionally, plaintiff claims he is entitled to $19,000 compensation that defendant failed to pay during the first year of the agreement. After several discovery disputes, the defendant

---

1. DEL.CODE ANN. tit. 19 § 1101 et. seq. (1998).

filed an amended answer and counterclaim (D.I.38), alleging that plaintiff also breached the employment agreement by failing to sign a non-compete agreement, and also alleging that plaintiff had made material misrepresentations to the defendant, which would entitle it to rescind the agreement on the ground of equitable fraud. Both parties have completed discovery, and currently pending is the defendant's Motion for Summary Judgment.

## II. FACTS[2]

DSC is a closely held corporation that sells safety and security devices, such as fire alarm systems, sprinklers and detection systems. After negotiations between Schiavello and Carl Thomas, the president and founder of DSC, plaintiff and defendant executed an employment agreement on October 31, 1996, and Schiavello began work on November 26, 1996. (D.I. 53 at A153–156). Plaintiff's position was Vice President of End-user Sales. Plaintiff tendered his resignation on March 13, 1998, and left DSC on March 27, 1998. According to plaintiff's resume, updated August 20, 1996, in a section entitled "Professional Security Experience Highlights", plaintiff was working for Eastman Kodak as a Director of Sales at the time he interviewed with DSC. Prior to that he was a Regional Sales Manager for Eastman Kodak from 1992 through 1995, and worked for ADT Security Systems from 1984–1991. (D.I. 53 at A137). Mr. Thomas made no further inquiries regarding plaintiff's employment history. During discovery, defendant uncovered certain facts that it alleges are material misrepresentations made by plaintiff during the negotiation of the employment agreement. During 1996, plaintiff had been working less than one day a week at Kodak, even though he had told Mr. Thomas he was leaving Kodak because

he was tired of traveling and being away from home so much. (Id. at A91, A2). Furthermore, he remained employed at Kodak for six months after beginning work at DSC. (Id. at A166). Defendant also learned that plaintiff omitted several employers from his resume. From June through October 1996, plaintiff worked at First Data Merchant Services Corp. ("First Data"). Additionally, he worked for Electronic Services International ("ESI") for nearly a year during 1991 and 1992. (Id. at A61–62, A81–82, A102–106). Finally, defendant maintains that plaintiff misrepresented his earnings at his previous employers, in order to drive up his salary and bonus at DSC, but these facts are in dispute.

## III. SUMMARY JUDGMENT STANDARD

 Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine only if a reasonable jury could find for the nonmoving party. *Id.*

 While the moving party has the initial burden to identify evidence that demonstrates the absence of a genuine issue of material fact, once that burden has been met, the nonmoving party must make a sufficient showing to establish the existence of every element necessary to its case and on which it will bear the burden

**2.** In their briefs, the parties set forth many facts dealing with the terms of the agreement, whether certain sums of money were paid on time, the non-compete clause, whether a bonus was paid, and whether a bonus program was in place. However, the only legal issue pertaining to this motion is the alleged equitable fraud on the part of the plaintiff. Therefore, the facts relating to defendant's alleged breach of contract will not be examined, because they are not relevant to the current issue.

of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.,* 812 F.2d 141, 144 (3d Cir.1987). Credibility determinations are not the function of the judge; rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## IV. DISCUSSION

In its Motion for Summary Judgment, defendant maintains that plaintiff is barred from seeking damages for a breach of the employment agreement when the employer only entered into the agreement because of plaintiff's material misrepresentations concerning his employment history and qualifications. Defendant alleges that under Delaware law, the after-acquired evidence of plaintiff's resume fraud requires equitable rescission and is a total bar to plaintiff's recovery for breach of contract. Plaintiff maintains that resume fraud should not operate as a complete bar to relief for breach of contract. Plaintiff also alleges that he did not commit resume fraud, or that there are genuine issues of material fact as to whether he committed resume fraud. This leaves the Court with two issues: (1) is the after-acquired evidence of resume fraud a complete bar to recovery for a breach of contract claim under Delaware law; and (2) if so, did plaintiff commit resume fraud, entitling defendant to rescission of the employment agreement and summary judgment in its favor.

▮ In analyzing the legal issues raised in this motion, the Court recognizes that a federal court sitting in a diversity action must apply the substantive law of the state in which it sits. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If there is no ruling by the state's highest court, then the federal court must "apply what they find to be the state law after giving 'proper regard' to the relevant rulings of other courts of the state." C.I.R. v. Bosch's Estate, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *First Nat. State Bank of N.J. v. Commonwealth Fed. Sav. & Loan Assoc.,* 610 F.2d 164, 172 (3d Cir.1979). When state law is unclear, the District Court must predict how the state's highest court would resolve the issue. *Rabatin v. Columbus Lines, Inc.,* 790 F.2d 22, 24 (3d Cir.1986); *McGowan v. Univ. of Scranton,* 759 F.2d 287, 291 (3d Cir.1985).

### A. After–Acquired Evidence and Resume Fraud under Delaware Law

▮ Defendant argues that the after-acquired evidence of plaintiff's resume fraud should bar his breach of contract claim.

The after-acquired evidence doctrine shields an employer from liability or limits available relief where, after a termination, the employer learns for the first time about employee wrongdoing that would have caused the employer to discharge the employee. *See Camp v. Jeffer, Mangels, Butler & Marmaro,* 35 Cal.App.4th 620, 41 Cal.Rptr.2d 329 (Cal.Ct.App.1995). Where the employee's misconduct consists of resume fraud, the after-acquired evidence doctrine affords an employer a defense if the employer would not have hired the employee if it had known of the fraud. *See Welch v. Liberty Mach. Works, Inc.,* 23 F.3d 1403, 1405 (8th Cir.1994). "The after-acquired evidence doctrine has its foundation in the logic that an employee cannot complain about being wrongfully discharged because the individual is no worse off that he or she would have been had the truth of his or her misconduct been presented at the outset." *Gassman v. Evangelical Lutheran Good Samaritan Soc'y,* 22 Kan.App.2d 632, 921 P.2d 224, 226 (1996).

*Crawford Rehabilitation Servs. Inc. v. Weissman,* 938 P.2d 540, 547 (Colo.1997).

██ Defendant argues that Delaware courts would allow after-acquired evidence to bar contract claims where the contract was entered into in reliance on material misrepresentations by the plaintiff. Delaware courts recognize that, under ordinary contract principals, transactions entered into in reliance upon material misrepresentations are voidable. *See Kern v. NCD Indus., Inc.,* 316 A.2d 576, 582 (Del.Ch. 1973) ("Fraud is the misrepresentation or concealment of a material fact and when proved calls for rescission of a thus tainted contract."); *Joseph Bancroft & Sons Co. v. Enterprise Machine and Development Corp.,* 1990 WL 63825, at *2 (Del.Super. May 2, 1990) ("For the defendant to succeed in a claim of misrepresentation it must show that the misrepresentation of fact was material, that it induced the defendant to execute the contract and that the reliance on the misrepresentation was justified.") (citing *Norton v. Poplos,* 443 A.2d 1 (Del.Super.1982)). Additionally, Delaware courts have sanctioned the use of after-acquired evidence. *See Davenport Group MG, L.P. v. Strategic Investment Partners, Inc.,* 685 A.2d 715, 723 (Del.Ch. 1996) (sanctioning use of after-acquired evidence as applied in federal court in employment discrimination setting). Therefore, the Court holds that under Delaware law, the after acquired evidence of resume fraud is a defense to plaintiff's breach of contract claim. The issue remains, however, as to whether it is a partial or total defense.

██ In *McKennon v. Nashville Banner Publishing Company,* 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), the Supreme Court held that after-acquired evidence of wrongdoing that would have resulted in discharge does not bar an employee from all relief under the ADEA, but rather only limits damages to back pay, while eliminating the possibility of front pay and reinstatement. *Id.* at 356, 115 S.Ct. 879. The Court held that the ADEA and Title VII both share the common purpose of the elimination of discrimination in the workplace. *Id.* at 358, 115 S.Ct. 879. Compensation for injuries caused by discrimination under these statutes serves not only to make the victim whole, but also to deter future employer misconduct. *Id.* The private litigant who seeks redress for his injuries vindicates individual and societal objectives and "[i]t would not accord with the scheme if after-acquired evidence of wrongdoing that would have resulted in termination operates, in every instance, to bar relief for an earlier violation of the [ADEA]." *Id.* Therefore, claims based on violations of federal employment discrimination statutes cannot be completely barred by after-acquired evidence. The *McKennon* holding has subsequently been applied in cases involving the after-acquired evidence of resume fraud. *See, e.g., Wallace v. Dunn Constr. Co.,* 62 F.3d 374, 378–80 (11th Cir.1995); *Wehr v. Ryan's Family Steak Houses, Inc.,* 49 F.3d 1150, 1152–53 (6th Cir.1995).

The *McKennon* holding, however, is not germane to the case at bar, which involves a breach of contract claim. A breach of contract claim does not implicate the public policy interests protected by *McKennon.* "These claims relate to a private contract or promise between an employer and employee and do not raise any public-policy concerns, other than the general interest society has in the integrity of the employment relationship between employer and employee." *Weissman,* 938 P.2d at 549. Therefore, the Court holds that after-acquired evidence of resume fraud is a complete defense to a claim of breach of contract. *See Massey v. Trump's Castle Hotel & Casino,* 828 F.Supp. 314, 325 (D.N.J.1993) (holding that employer may use after-acquired evidence of resume fraud to avoid liability for breach of an employment contract, if it can show that it had the power to void the contract due to reliance on material misrepresentations, even where the employer was unaware of that power when the breach occurred); *O'Day v. McDonnell Douglas Helicopter Co.,* 191 Ariz. 535, 959 P.2d 792, 796 (1998) (holding that "after-acquired evidence of

employee misconduct is a defense to a breach of contract action for wages and benefits lost as a result of discharge if the employer can demonstrate that it would have fired employee had it known of the misconduct"); *Weissman*, 938 P.2d 540 (same). The Supreme Court of Colorado summarized the elements of this defense:

> To assert the defense of after-acquired evidence of resume fraud, an employer must prove that the employee's fraud was material and that a reasonable, objective employer would not have hired the employee if it had discovered the misrepresentation at the outset. The following factors are relevant to that determination. First, would a reasonable employer have regarded the misstated or omitted fact as important? The nature of the misrepresentation and the extent to which it relates to the qualifications for the job may bear on this issue. Information about the employer's past conduct or policies may also bear upon this issue by focusing on what the employer regarded as important in a non-adversarial context. The second factor is whether the employee concealed or misrepresented the fact or facts with the intent of creating a false impression in the mind of the employer.... We also decline to adopt a separate reliance component of the test. Reliance is incorporated into the inquiry of whether the employer would have regarded the misstated or omitted fact as important. [Resumes] are prepared for the employer, and employers are expected to rely upon them in making employment decisions. The employer need not prove that it called every reference or checked on every credential. What it must prove is that a reasonable employer would have regarded the omission as important to the hiring decision.

*Weissman*, 938 P.2d at 549–50 & n. 14. (citations omitted). The court went on to add that "not every misrepresentation on [a resume] will allow an employer to avoid liability for breach of contract or equitable obligations. An employer can rely on af-ter-acquired evidence of resume fraud as a complete defense only if it can prove that the employee's concealment undermined the very basis upon which he or she was hired. This requirement serves the purpose of preventing 'an employer from combing a discharged employee's record for evidence of any and all misrepresentations, no matter how minor or trivial, in an effort to avoid legal responsibility for an otherwise impermissible discharge.'" *Id.* at 549 (quoting *Johnson v. Honeywell Info. Systems, Inc.*, 955 F.2d 409, 414 (6th Cir.1992)).

**B. Resume Fraud as Applied to this Case**

Defendant contends that because of plaintiff's equitable fraud, he should be completely barred from recovering damages for breach of contract. In support of this, defendant alleges that plaintiff did not list his employment with ESI and First Data on his resume, which was updated shortly before he gave it to Carl Thomas. Furthermore, defendant maintains that Mr. Thomas had no other knowledge of these facts. Defendant maintains that these misrepresentations were material, a reasonable employer would find these omissions important, and if defendant had known of the misrepresentations, it would not have hired plaintiff. Additionally, defendant maintains plaintiff misstated his earnings with his previous employers in order to receive a higher salary and bonus from DSC. He also misled DSC by failing to resign from Kodak until six months after his employment with DSC began.

Plaintiff responds that he made no misrepresentations on his resume and any omissions or gaps in employment unknown to DSC were not material to their decision to hire him. Plaintiff maintains that the resume heading, "Professional Security Experience Highlights", does not purport to be complete with regard to professional security experience. Additionally, plaintiff alleges that defendant did not hire him because of its reliance on his resume, but rather because of DSC's prior contacts

with plaintiff while employed elsewhere. Finally, plaintiff testified under oath that Mr. Thomas was aware that Kodak was still paying him after he began working for DSC, but that he was not doing any work for Kodak.

■ The evidence submitted by both sides on this issue creates a genuine issue of material fact as to whether plaintiff committed resume fraud. Defendant's submissions have not demonstrated that it is entitled to judgment as a matter of law. Plaintiff's evidence has created a genuine issue of material fact. A fact-finder must decide whether the omissions from the resume were misrepresentations, and if so, whether they, and other misrepresentations, were material. Additionally, defendant must prove that it would not have hired plaintiff had it known of the misrepresentations, as set forth above.

## V. CONCLUSION

Defendant's Motion for Summary Judgment is denied. At trial, defendant may put on the defense of after-acquired evidence of resume fraud, as a complete defense to the breach of contract claim.