2006 OK 97

**Frank J. SILVER, Plaintiff/Appellant,**

v.

**CPC–SHERWOOD MANOR, INC., a foreign corporation, Defendant/Appellee.**

No. 102,632.

Supreme Court of Oklahoma.

Dec. 19, 2006.

Jonathan E. Shook, James E. Erwin, Shook, Huggins & Johnson, P.C., Tulsa, OK, for the plaintiff/appellant.

Laurence L. Pinkerton, Judith A. Finn, Pinkerton & Finn, P.C., Tulsa, OK, for the defendant/appellee.

Mark Hammons, Jeff A. Lee, Hammons & Associates, Inc., Oklahoma City, OK, for amicus curiae Oklahoma Employment Lawyers' Association.

TAYLOR, J.

## I. ISSUES

¶1 The dispositive question before this Court is whether the after-acquired evidence doctrine has no effect on damages, limits damages, or bars liability in an action for wrongful termination in violation of public policy. We answer in cases of wrongful termination in violation of public policy when the employee is not statutorily disqualified from the employment, the after-acquired evidence doctrine limits compensatory damages rather than bars all liability.

## II. STANDARD OF REVIEW

¶2 This is an appeal from the trial court's grant of summary judgment in favor of the defendant. The trial court ruled that as a matter of law the plaintiff's claim for wrongful termination in violation of public policy is barred by the after-acquired evidence doctrine. We review questions of law under a *de novo* standard. *Fowler v. Norman Municipal Hospital*, 1991 OK 30, ¶6, 810 P.2d 822, 824.

## III. FACTS AND PROCEDURAL HISTORY

¶3 This is the second time that this action has been before this Court. *See Silver v. CPC–Sherwood Manor, Inc.*, 2004 OK 1, 84 P.3d 728 (*Silver I*). Silver was hired as a cook at CPC–Sherwood Manor, Inc. (nursing home). On December 9, 2001, while at work, Silver developed diarrhea and began vomiting. He allegedly was fired for leaving work to seek medical attention. Silver sued for wrongful termination, alleging he was fired in violation of public policy as reflected in the State Department of Health's rules. The nursing home filed a motion to dismiss, which the trial court granted, and Silver appealed. In *Silver I*, this Court granted certiorari; found Silver had stated a claim for wrongful termination in violation of the public policy based on title 63, sections 1–1102(a) and (c) and 1–1109(a)(4); reversed the trial court's judgment; and remanded the cause to the district court. *Id.* ¶7, 84 P.3d at 730.

¶4 On remand, the nursing home filed a motion for summary judgment based on the after-acquired evidence doctrine. As an undisputed fact in its motion for summary judgment, the defendant asserted that Silver had been convicted of and imprisoned for the crimes of robbery and of aiding and abetting

a murder. The defendant averred that if it had known of Silver's criminal record, it would have terminated him or could not have hired him based on the Oklahoma Nursing Home Care Act, 63 O.S.2001, § 1–1950(F)(2). The defendant argued that under the facts and the after-acquired evidence doctrine, Silver's conviction acted as a complete bar to his claims. Silver did not dispute that he had been convicted of the crime of accessory before the fact to murder but argued the Oklahoma Nursing Home Care Act does not mandate his termination and the after-acquired evidence doctrine does not bar all relief.

¶ 5 The district court granted the defendant's motion for summary judgment. The Court of Civil Appeals affirmed the district court's judgment. The Court of Civil Appeals held that Silver's conviction, discovered after the nursing home terminated his employment, was a complete bar to his claim for relief for wrongful termination in violation of public policy. This Court granted certiorari.

## IV. ANALYSIS

■ ¶ 6 This Court has not previously decided the effect of the after-acquired evidence doctrine in cases of wrongful termination. The Colorado Supreme Court has stated the general rule: under the after-acquired evidence doctrine, an employee's relief for wrongful discharge may be barred or limited by the employer's post-discharge discovery of an employee's wrongdoing. *Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 547 (Colo.1997). The after-acquired evidence doctrine is based on the idea "that an employee cannot complain about being wrongfully discharged because the individual is no worse off than he or she would have been had the truth of his or her misconduct been presented at the outset." *Gass-*

mann v. Evangelical Lutheran Good Samaritan Soc'y, Inc., 261 Kan. 725, 933 P.2d 743, 746 (1997).

¶ 7 In support of its position that the after-acquired evidence doctrine precludes all recovery by Silver for wrongful termination, the nursing home relies on *Summers v. State Farm Mut. Automobile Ins. Co.*, 864 F.2d 700 (10th Cir.1988); *Washington v. Lake County, Illinois*, 969 F.2d 250 (7th Cir.1992); and *Mathis v. Boeing Military Airplane Co.*, 719 F.Supp. 991 (D.C.Kan.1989).[1] The holdings in these cases were abrogated by *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), and, thus, are no longer cogent authority.

¶ 8 Courts recognize the after-acquired evidence doctrine either as a bar to an employer's liability or as a limit on the remedy. *Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330 (Tenn.2005); *see McKennon*, 513 U.S. at 352, 115 S.Ct. 879; *Crawford Rehab. Servs., Inc.*, 938 P.2d at 540. To the extent courts have held that the after-acquired evidence doctrine bars all relief, with few exceptions, the claims in the cases were based on an employment contract and did not raise public policy concerns. *See Teter*, 181 S.W.3d at 339; *Crawford Rehab.Servs., Inc.*, 938 P.2d at 540 (Colo.1997); *McDill v. Environamics Corp.*, 144 N.H. 635, 757 A.2d 162, 166 (2000). Courts reason that under principles of contract law, the employee's breach of contract excused the employer's later breach. *Crawford Rehab.Servs., Inc.*, 938 P.2d at 540; *McDill v. Environamics Corp.*, 144 N.H. 635, 757 A.2d 162, 166 (2000).

■ ¶ 9 When the employee's claim of wrongful termination is based on a violation of public policy, courts are reluctant to bar recovery but generally apply the after-acquired evidence doctrine to limit relief. *See*

1. The nursing home also relies on *Ballard v. Muskogee Reg'l Med. Ctr.*, 238 F.3d 1250 (10th Cir.2001), for the proposition that "the Tenth Circuit Court of Appeals relied on *McKennon v. Nashville Banner Publishing Co.* to find that the Hospital had established to the satisfaction of the jury what the court called the 'anyway' defense, that is, that the Hospital would have terminated the plaintiff for poor work performance regardless of her exercise of free speech right." A reading of *Ballard*, a mixed-motive case, not an after-acquired evidence doctrine case, shows that the court relied on *McKennon*, in reaching its decision on whether a "front pay" award was appropriate. *Ballard*, 238 F.3d at 1254.

The nursing home also relies on *Pratt v. Okla. Dept. of Agric.*, 1983 OK CIV APP 5, 661 P.2d 533, which has no precedential value. *See* Oklahoma Supreme Court Rules, rule 1.200, 12 O.S. 2001, ch. 15, app.

*McKennon,* 513 U.S. at 360–361, 115 S.Ct. 879; *McDill,* 757 A.2d at 166; *Camp v. Jeffer, Mangels, Butler & Marmaro,* 35 Cal. App.4th 620, 41 Cal.Rptr.2d 329 (1995). The issue in *McKennon* was whether "all relief must be denied when an employee has been discharged in violation of the [Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 602, as amended, 29 U.S.C. § 621 *et seq.* (1988 ed. and Supp. V),] and the employer later discovers some wrongful conduct that would have led to discharge if it had been discovered earlier." 513 U.S. at 355, 115 S.Ct. 879. The Court first stressed the common purposes of federal anti-discrimination statutes as deterrence and compensation. *Id.* at 358, 115 S.Ct. 879. The deterrent purpose, the Court noted, would not be served if the after-acquired evidence doctrine allowed an employer to escape liability in every case. *Id.* The Court also noted that the employee, in seeking to redress his or her own injuries, preserves the underlying congressional policy against discriminatory practices. *Id.*

¶ 10 In fashioning a rule, the *McKennon* Court determined that after an employer establishes that it would have discharged the employee based on the after-acquired evidence, reinstatement and front pay, which is pay after the discovery of the employee's wrongful conduct, would not be appropriate remedies. 513 U.S. at 361, 115 S.Ct. 879. However, evidence of the employee's wrongdoing would be relevant to the measure of damages. *Id.* The Court concluded that the remedy should be based on "backpay from the date of the unlawful discharge to the date the new information was discovered." *Id.* at 362, 115 S.Ct. 879. The Court rejected an absolute rule barring all recovery because it would undermine the ADEA's objectives. *Id.*

¶ 11 In response to federal certified questions, the Arizona Supreme Court answered the questions of whether the after-acquired evidence doctrine applies and how it limits or precludes damages in cases of wrongful termination in violation of public policy and in cases for breach of an employment contract. *O'Day v. McDonnell Douglas Helicopter Co.,* 191 Ariz. 535, 959 P.2d 792 (1998). The

*O'Day* court answered "that after-acquired evidence is a defense to a breach of contract action for wages and benefits lost as a result of discharge if the employer can demonstrate that it would have fired the employee had it known of the misconduct." *Id.* at 796.

¶ 12 Addressing the after-acquired evidence doctrine in cases of wrongful termination in violation of public policy, the *O'Day* court recounted the three approaches: (1) after-acquired evidence "is not admissible because it is irrelevant or because it undermines the public policy goals" advanced by a wrongful termination action, (2) the after-acquired evidence doctrine is a complete bar to relief, and (3) the after-acquired evidence doctrine only limits relief. Rejecting the first approach, the court determined that it was irreconcilable with the employer's right to discharge an employee for wrongful conduct. The court determined the second approach failed to attribute any consequences to the employer's wrongful conduct.

¶ 13 The *O'Day* court adopted the third approach because it assigned consequences to both the employer's and the employee's wrongful conduct. 959 P.2d at 796. The court noted that the fears associated with a complete bar to recovery would be diminished by limiting damages. *Id.* at 797. The fears are: (1) an employer might conduct a search to find employee misconduct that it could use as a pretext for a discharge, (2) an employer might reserve knowledge of an employee's wrongdoing in case and until a discrimination charge would be made, and (3) an employee might tolerate repeated harassment or discrimination because of an imperfect work record. *Id.* The *O'Day* court also answered that "in an action in tort, after-acquired evidence will only affect the remedies available to the employee." *Id.*

¶ 14 Before the *McKennon* and *O'Day* decisions, this Court in *Mosley v. Truckstops Corp. of America,* 1993 OK 79, 891 P.2d 577, undertook a similar analysis as that undertaken by the *McKennon* and *O'Day* courts. The plaintiff asserted that he was discharged from his employment in retaliation for seeking legal advice concerning a worker's compensation claim. *Id.* ¶ 4, 891 P.2d at 579. The plaintiff had neglected to list a guilty

plea to a felony charge on his job application and listed a woman as his wife on his health insurance application when she was actually married to someone else. *Id.* ¶ 6, 891 P.2d at 580. The employer did not learn of these falsifications until after discharging the plaintiff. *Id.* This Court rejected the employer's position that the trial court should have instructed the jury that the after-acquired evidence doctrine could be a basis for denying all relief when the plaintiff's claim was based on retaliatory termination in violation of public policy as established by the Worker's Compensation Act. *Id.* ¶¶ 1, 13, 891 P.2d at 582.

 ¶ 15 This Court has not addressed the after-acquired evidence doctrine outside the worker's compensation retaliatory discharge context. However, this Court has stated that *McKennon* "would afford helpful guidance ... in the context of a state common-law claim." *Brown v. Ford,* 1995 OK 101, n. 2, 905 P.2d 223, 225 n. 2. We think *McKennon* and *O'Day* reach the proper result in applying the after-acquired evidence doctrine to limit, but not to bar, the remedies in actions for wrongful termination in violation of public policy. We adopt the rule that the after-acquired evidence doctrine limits the relief in actions for wrongful termination in violation of public policy but does not, as a matter of law, bar all recovery when the employee is not statutorily disqualified from the employment.

¶ 16 We recognize that *Camp v. Jeffer, Mangels, Butler & Marmaro,* 35 Cal.App.4th 620, 41 Cal.Rptr.2d 329 (1995), which relied on *McKennon,* found that the plaintiff's claims were barred. *Id.* at 339. *Camp* concluded that the after-acquired evidence doctrine bars all relief where "an employee who is disqualified from employment by government-imposed requirements nevertheless obtains a job by misrepresenting the pertinent qualifications." *Id.; see Cedeno v. Montclair State Univ.,* 319 N.J.Super. 148, 725 A.2d 38 (N.J.Super.Ct.App.Div.1999) *aff'd,* 163 N.J. 473, 750 A.2d 73 (2000) (holding that the public policy prohibiting an employee statu-

torily disqualified from public employment trumps the competing public policy prohibiting discrimination). Both *Camp* and *Cedeno* involved an employee who was statutorily banned from the employment and are factually distinguishable from the facts in the present case.

¶ 17 In the present case, Silver alleges that the nursing home did not ask if he had ever been convicted of a felony, but it asked about criminal convictions within the last ten years. Silver alleges that he left the answer blank, even though he could have truthfully answered "no" since it had been more than ten years since his conviction. Title 63, section 1–1950.1(C)(1) allowed the nursing home to temporarily hire Silver until the completion of a criminal arrest check. After the nursing home temporarily hired Silver, the onus was on it to provide Silver's name and relevant information within seventy-two hours to the Oklahoma State Bureau of Investigation (OSBI) for a criminal arrest check. 63 O.S. 2001, § 1–1950(C)(1). The OSBI would have had five days from receiving the information from the nursing home to complete the check and report the results to the nursing home. *Id.* § 1–1950(D)(2). If the criminal arrest check showed that Silver had committed the felony of aiding and abetting a murder, the nursing home was required to discharge him. *Id.* § 1–1950.1(F)(2).[2] Thus, Silver was lawfully employed until completion of the criminal arrest check. Whether the nursing home fulfilled its statutory obligation to contact the OSBI is not a part of the record. Thus, we need not decide whether an employee statutorily banned from the employment would be barred from all recovery because those facts are not before us.

## V. CONCLUSION

¶ 18 Silver's claim for wrongful termination was not barred as a matter of law based on the nursing home's discovery of his felony conviction. Therefore, the trial court erred in granting summary judgment against Silver. The Court of Civil Appeals' opinion is

---

**2.** The Court of Civil Appeals addressed a second issue of whether Silver's conviction of the crime of accessory before the fact to murder fell within title 63, section 1–1950.1(F)(2)'s prohibition of working in a nursing home. For purposes of this opinion only, we assume that it does.

vacated. The cause is remanded for further proceedings.

COURT OF CIVIL APPEALS' OPINION VACATED; TRIAL COURT'S JUDGMENT REVERSED; CAUSE REMANDED.

LAVENDER, OPALA, KAUGER, EDMONDSON, TAYLOR, COLBERT, JJ., concur.

WATT, C.J., concurs in result.

WINCHESTER, V.C.J., HARGRAVE, J., dissent.