816 So.2d 832 (2002)
WATSON CLINIC, LLP, Appellant,
v.
Vicente VERZOSA, M.D., Appellee.
No. 2D01-1103.
District Court of Appeal of Florida, Second District.
May 24, 2002.
*833 Steven L. Brannock, Michael P. Sampson, and David C. Borucke of Holland & Knight, LLP, Tampa, for Appellant.
Christine C. Daly and Norman White of Bradley, Johnson Law Firm, P.A., Lake Wales, for Appellee.
NORTHCUTT, Judge.
The circuit court held that the Watson Clinic was estopped from recovering money it mistakenly paid to its former employee, Dr. Vicente Verzosa. We reverse and remand with directions to enter judgment in the Clinic's favor.
The Watson Clinic operates medical facilities throughout central Florida. In 1990 it purchased Verzosa's medical practice in Lake Wales. Verzosa continued to practice at the location, now known as the Lake Wales Watson Clinic, under a series of employment contracts. In the last such contract, dated June 29, 1998, the parties agreed that Verzosa would receive a fixed salary of $145,000 per year. At about this time the Clinic installed a new payroll system and converted many of its employees from a monthly payment schedule to a bimonthly one. It then mistakenly began paying Verzosa the amount of his monthly compensation two times each month, effectively doubling Verzosa's salary.
Verzosa received the first extra paycheck in July 1998, less than a month after the start of his new contract. He asked the office manager of the Lake Wales clinic, Brenda Zettler, to "check how come I'm getting more money than I'm supposed to get." Zettler spoke with Cheryl Leffel and Faye Hampton, both of whom worked in the Watson Clinic's central accounting department. They recalled that Zettler said Verzosa's paycheck was "wrong" or "incorrect," but neither remembered her saying that Verzosa was being overpaid. Leffel and Hamilton began looking for a *834 missing paycheck, and eventually determined, incorrectly, that Verzosa had not been paid compensation of $13,198.70. Leffel told Zettler that Verzosa's bimonthly checks were correct and sent him additional checks for the "missing" compensation. In July or August, Verzosa again directed Zettler to ask the accounting department about his pay. Again she was told that the department had checked his compensation and that it was correct. Zettler also talked to several other Clinic employees, but all assured her that Verzosa's paychecks were accurate.
The Lake Wales clinic began losing money. In August 1999, the Watson Clinic's chief operating officer and its medical supervisor visited Verzosa to discuss the losses and to determine what could be done to turn the Lake Wales location around. Verzosa outlined why he thought the office was losing revenue, but he failed to mention that he was receiving double his salary. Management discovered the mistake in Verzosa's compensation several weeks after the August 1999 meeting. Eventually, the Watson Clinic sued Verzosa to recoup the extra payments. See First State Bank of Fort Meade v. Singletary, 124 Fla. 770, 169 So. 407 (1936) (recognizing action for recoupment).
One who mistakenly receives money must return it to its owner unless the recipient can assert some legal or equitable claim to the money. Id. at 408; Sharp v. Bowling, 511 So.2d 363, 365 (Fla. 5th DCA 1987). Here, Verzosa raised the affirmative defense of equitable estoppel. After a bench trial, the court found in Verzosa's favor, ruling that the Watson Clinic was "estopped from changing its position" regarding Verzosa's salary because the Clinic had been notified of the error and Verzosa had "expended the funds to his detriment."
Equitable estoppel must be applied with great caution. Pelican Island Prop. Owners Ass'n v. Murphy, 554 So.2d 1179, 1181 (Fla. 2d DCA 1989). The party raising estoppel must prove its elements by clear and convincing evidence. Ennis v. Warm Mineral Springs, Inc., 203 So.2d 514, 519 (Fla. 2d DCA 1967). Those elements are: (1) the party against whom estoppel is sought must have made a representation about a material fact that is contrary to a position it later asserts; (2) the party claiming estoppel must have relied on that representation; and (3) the party seeking estoppel must have changed his position to his detriment based on the representation and his reliance on it. Lewis v. Dep't of Health & Rehab. Servs., 659 So.2d 1255, 1256-57 (Fla. 4th DCA 1995).
Even if we assume that the accounting department employees' statements to Zettler were sufficient to meet the first element of equitable estoppel, Verzosa failed to prove the other two elements, reliance and a detrimental change in his position. A claim of reliance must fail where both parties have equal knowledge of the truth. See Lennar Homes, Inc. v. Gabb Constr. Serv., Inc., 654 So.2d 649, 652 (Fla. 3d DCA 1995). Verzosa knew that his employment contract entitled him to a yearly salary of $145,000, and he also knew that he was receiving twice that amount. He knew that his written employment contract provided that it could be amended only by "a subsequent agreement in writing signed by" the Watson Clinic and himself, and he knew that the parties had not executed such an amendment. Therefore, he knew that the accounting department employees were mistaken in their assertions that his paycheck amount was correct. Under these circumstances, Verzosa could not claim reliance on those assertions.
*835 Nor did Verzosa show that he detrimentally changed his position. His only allegation of detriment was that he had spent the money. This was insufficient. No detrimental change in position can occur where the only claimed harm is the inability to retain money that should never have been received in the first place. Lewis, 659 So.2d at 1257.
We reverse the judgment in Verzosa's favor and remand to the circuit court with directions to enter judgment for the Watson Clinic.
SILBERMAN and KELLY, JJ., concur.