David TOMASINI, Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC., a Florida corporation, d/b/a Mount Sinai Medical Center, Defendant.

No. 02–22044–CIV.

United States District Court, S.D. Florida.

Feb. 20, 2004.

Neil F. McGuinness, Frank Howard Henry, Bennett Aiello Henry & McGuinness, Miami, FL, for David Tomasini, M.D., plaintiff.

Richard L. Lapidus, Miami, FL, for Mount Sinai Medical Center of Florida, Inc., a Florida corporation dba Mount Sinai Medical Center, defendant.

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ALTONAGA, District Judge.

THIS CAUSE came before the Court on Plaintiff, David Tomasini, M.D.'s (hereinafter "Dr. Tomasini") Motion for Summary Judgment on Counts I & II of the Complaint and on MSMC's Affirmative Defenses and Counterclaims (D.E.67). The undersigned has carefully reviewed the parties' memoranda, statements of undisputed and disputed facts, applicable law, and the record.

## I. FACTUAL BACKGROUND

In late December of 1998, Defendant, Mount Sinai Medical Center (hereinafter "Mount Sinai"), executed a contract with the executive search firm of Heidrick & Struggles ("H & S") to assist it in the search for a chief medical officer ("CMO"). By early 1999, a job specification had been finalized by both the Mount Sinai search committee and H & S, and a lengthy search process for the CMO began. A Mount Sinai search committee and Mount Sinai physicians interviewed prospective candidates, and at the conclusion of the process, Dr. Tomasini was selected.

As part of the selection process, H & S prepared a brochure that Dr. Tomasini did not see or approve, containing information about him that had been provided to H & S by Dr. Tomasini as a result of an interview by H & S recruiter, Chris Clark. According to Mount Sinai, it made its decision to hire the doctor based on the H & S brochure.[1] The brochure stated that "under no circumstances should the evaluation contained herein be transmitted to the candidate." During the interview, Clark did not ask Dr. Tomasini whether he had been terminated in the past. Indeed, Mount Sinai had not instructed Clark to focus on whether any of the candidates, including Dr. Tomasini, had been previously terminated from prior employers. With respect to his notes of the interview, Clark stated that "[t]hey're a combination of my notes of what he was telling me and my paraphrasing and impression of what he was telling me."

After his selection, Dr. Tomasini negotiated an employment agreement with Mount Sinai dated May 6, 1999. On May 20, 1999, after having entered into the employment agreement with Mount Sinai, Dr. Tomasini completed a Mount Sinai ap-

1. Mount Sinai had also told Clark that it would perform its own "reference calls."

plication form. In explaining why he had been "discharged or asked to resign" from Community Hospital, his previous employer, Dr. Tomasini wrote as the reason: "Change in Administration." Dr. Tomasini began working for Mount Sinai on or about June 7, 1999.

Bruce M. Perry, at that time Mount Sinai's Chief Executive Officer, amended Dr. Tomasini's employment agreement on October 13, 2000. It is undisputed that Perry had the authority to enter into the amendment and was not required to obtain approval for the amendment from the Mount Sinai Board of Trustees or anyone else. Although Mount Sinai has certainly indicated that "[a]n issue of fact exists as to whether the 'amendment' was ... authorized or is binding on the Hospital," no factual issue has been presented [2] by way of citations to the record, to rebut the evidence presented by Dr. Tomasini that Mr. Perry had the full and unrestricted authority to set compensation and enter into the amendment. The agreement was amended as follows:

> The following paragraph contained in your letter of Agreement dated May 6, 1999 is being changed from:
>
> - In the event you are asked to resign other than for cause, defined as conviction of a felony, moral turpitude or gross neglect of duties, you would be entitled to eighteen months of base salary as severance.
>
> to:

- In the event you are asked to resign other than for cause, defined as conviction of a felony, moral turpitude or gross neglect of duties, you will be entitled to eighteen [sic] of base pay, paid monthly, plus 30% of base pay paid in one lump sum in lieu of benefits.

The lump sum payment was to be calculated based on eighteen months of base pay. According to Mount Sinai, "the sole effect [of the amendment] was to give Dr. Tomasini not only the 18 months base pay as severance, but 30 percent of that amount in addition as a lump sum." (See Countercl. II ¶ 18).

During his tenure at Mount Sinai, Dr. Tomasini received two performance-based bonuses, one on August 24, 2000 and one on February 5, 2001. He remained employed at Mount Sinai for approximately two years and five months, and until October 8, 2001, he reported to Perry. After Perry was terminated, Dr. Tomasini, too, was terminated by Perry's replacement, Steven Sonenreich. Other members of the management team were also later discharged.

At the time of Dr. Tomasini's termination, Mount Sinai was unaware of any grounds that would support a resignation for "moral turpitude or gross neglect of duties." [3] The Plaintiff has also identified ten "key" witnesses who have testified they are not aware of any act or omission

---

**2.** The "factual issue" presented by Mount Sinai is stated as follows:

The Amendment ... was intended not to simplify forms of administration, but simply to get more money out of Mount Sinai Hospital for Dr. Tomasini, .... Bruce Perry has testified that the 30% increase in severance was to be in lieu of life insurance and health benefits after severance. He admitted that David Tomasini did not have a right before the Amendment... to either health insurance or life insurance after severance.... He then testified that it might be

in lieu of vacation benefits after severance .... He admitted, once you are fired, you don't get vacation. An issue of fact exists as to whether the "amendment" was supported by consideration, was authorized or is binding on the Hospital.
(Def.'s Statement of Material Facts at 1–2).

**3.** The parties concede that the ground of "conviction of a felony," as contained in the amendment to the employment agreement, is not at issue here.

of Dr. Tomasini that would constitute "gross neglect of duties" or "moral turpitude." Nonetheless, Mount Sinai maintains that,

[a]lthough the corporate officer who terminated Plaintiff's employment was unaware at the time or [sic] the facts constituting "moral turpitude," Dr. Tomasini in fact, took monies to which he was not entitled from the Defendant, and received, without authority of the Board of Trustees or the Compensation Committee, an amendment to his Contract of Employment, for which there was no justification.

(See Def.'s Resp. to Pl.'s Req. for Admis. ¶ 2). Also,

[t]he Defendant's Officer who made the decision to terminate Dr. Tomasini was, in fact, unaware of the facts constituting "gross neglect of duties." The Defendant corporation, however, was aware of these facts since the knowledge was possessed by a person who held that office prior to the officer who fired Dr. Tomasini.

(See Def.'s Resp. to Pl.'s Req. for Admis. ¶ 4). Dr. Tomasini did accept payment of a $41,625 bonus in February 2001 that Mount Sinai maintains he was not entitled to because it overlaps with a bonus he had earlier received in August of 2000. At the time he terminated Dr. Tomasini, Sonenreich was unaware that the bonus in question had been paid.

As it pertains to Dr. Tomasini's vacation, sick and holiday pay, his agreement with Mount Sinai provides: "You will be entitled to up to four weeks of paid vacation time per annum and other standard holiday and sick pay benefits." (May 6, 1999 Letter of Agreement). By the time he was terminated by Mount Sinai, Dr. Tomasini had accrued 173 hours of earned time

off. At termination, an executive is entitled to be paid his earned time off.

Although the Vice President of Human Resources for Mount Sinai drafted a severance agreement for Dr. Tomasini that included amounts for salary, base pay, earned time off and deferred compensation, that agreement was not made final and Dr. Tomasini did not receive severance pay or other accrued and earned benefits. Dr. Tomasini therefore filed suit for breach of contract seeking to recover in Count I: 18 months of salary, for a total of $468,000; 173.6 hours of earned (but unpaid) vacation time, for a total of $26,040; and attorney's fees and costs. In Count II, he seeks the recovery of a lump sum payment of 30% of his base salary for eighteen months, as provided for in the October 13, 2000 amendment to the employment agreement, for a total of $140,400, as well as attorney's fees and costs. By Order dated January 2, 2004, summary judgment was denied as to Count III, pertaining to Dr. Tomasini's claim for supplemental retirement benefits. Count IV of the Complaint was earlier dismissed on October 27, 2003 pursuant to the parties' stipulation.

Mount Sinai, in Count I of its Counterclaim, alleges fraud in the inducement. It maintains it hired Dr. Tomasini in reliance upon misrepresentations contained in the H & S brochure, misrepresentations that the doctor allegedly made to the H & S recruiter. In Count II, incorrectly[4] labeled "Gross Neglect of Duties," Mount Sinai alleges that Dr. Tomasini, without authority, enriched himself by amending his employment agreement and converting funds of Mount Sinai (by accepting a duplicate bonus). These issues are also raised as affirmative defenses. Mount Sinai has

---

4. Mount Sinai now concedes the label it gave to Count II was "improvident," and that the cause of action it meant to allege is for money had and received or contract implied in fact. (See Def.'s Resp. to Order Requiring Further Briefing by Def.)

raised as "issues of fact" that need to be tried the following:

 A. Whether during his tenure, as Executive Vice President of Mount Sinai Hospital, David Tomasini took $41,625 from the Hospital that he was not entitled to.

 B. Whether anyone, who was aware that David Tomasini had received an annual bonus in the summer of 2000, authorized an additional annual bonus to be paid to him in February of 2001.

 C. Whether a Senior Vice President of a charitable corporation commits gross neglect of duties, or an act condemned as moral turpitude by unlawfully taking $41,625 of the institutions [sic] money.

 D. Whether anyone authorized the Addendum to the Contract increasing the severance for the Plaintiff.

 E. Whether the Addendum to the Contract increasing the severance was supported by any consideration whatsoever.

 F. Whether Dr. Tomasini deliberately lied to the search firm that recruited him regarding the termination of his employment at his prior job and when the Hospital knew or should have known of the lie.

(Def.'s Statement of Material Facts at 3–4).

## II. *LEGAL ANALYSIS*

### A. *Summary Judgment Standard*

Under Rule 56(c), Fed.R.Civ.P., a motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Supreme Court explained the movant's burden in

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), as follows:

 In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.* at 322, 106 S.Ct. 2548. The Court further stated that "Rule 56(c) therefore requires a non-moving party to go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548.

Under this standard, the mere existence of *"some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(emphasis in original); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An issue is only "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Allen v. Tyson Foods,* 121 F.3d 642, 646 (11th Cir.1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen,* 121 F.3d at 646. Thus, while all of the evidence and the factual inferences drawn therefrom must be viewed in the light most favorable to the non-moving party, *Celotex,* 477 U.S. at

322–23, 106 S.Ct. 2548; *Allen,* 121 F.3d at 646, the non-moving party has a duty to present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is "merely colorable" or "not significantly probative," is not enough. *Id.; see also Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir.1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

### B. *Counts I and II of the Complaint*

#### 1. *As to the Claim for Severance Benefits in Counts I and II of the Complaint, After–Acquired Evidence of Plaintiff's "Misconduct" Does Not Present a Triable Issue*

■ The parties concede that Dr. Tomasini was not asked to resign "for cause," which is defined by the parties' amended contract[5] as "a felony, moral turpitude or gross neglect of duties." Because there is no question regarding whether or not Dr. Tomasini committed a felony, the issue presented is if Mount Sinai's later discovery that Dr. Tomasini committed acts that constitute moral turpitude or gross neglect of duties would relieve Mount Sinai of its obligation to pay him eighteen months of base pay plus 30% of his base pay as severance. This is an issue of law for the court to resolve. The additional question presented in the summary judgment papers is whether on the factual record, the acts complained of come within the purview of moral turpitude or gross neglect of duties. This latter question is a mixed one

of law and fact, which the undersigned does not reach in light of the conclusion reached on the first issue.

■ The late discovery (during the litigation) by Mount Sinai of acts by Dr. Tomasini that it now seeks to use as a bar to the doctor's recovery of severance benefits, is tantamount to application of the after-acquired evidence doctrine. The after-acquired evidence doctrine "shields an employer from liability or limits available relief where, after a termination, the employer learns for the first time about employee wrongdoing that would have caused the employer to discharge the employee." *Schiavello v. Delmarva Sys. Corp.,* 61 F.Supp.2d 110, 113 (D.Del.1999) (quoting *Crawford Rehab. Services Inc. v. Weissman,* 938 P.2d 540, 547 (Colo.1997)). The parties concede that there is no Florida case addressing the use of the after-acquired evidence doctrine in the context of a wrongful discharge action that does not raise allegations of the deprivation of constitutional rights. Admittedly, in the context of a Title VII and Equal Pay Act claim, the Eleventh Circuit has followed and interpreted the Supreme Court decision of *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), to provide that the after-acquired evidence rule "applies to cases in which the after-acquired evidence concerns the employee's misrepresentations in a job application or resume, as well as cases in which the after-acquired evidence relates to employee wrongdoing during employment." *Wallace v. Dunn Construction Co. Inc.,* 62 F.3d 374, 379 (11th Cir.1995) (finding also that party re-

---

**5.** Mount Sinai's argument that the amendment is not supported by consideration, and is therefore unenforceable, is raised for the first time in the summary judgment papers. This position is wholly lacking in merit as Florida law does not require there to be additional consideration for an amendment to an

employment agreement. Continued employment constitutes sufficient consideration. *See, e.g., South Miami v. Dembinsky,* 423 So.2d 988, 990 (Fla. 3d DCA 1982); *Coastal Unilube, Inc. v. Smith,* 598 So.2d 200 (Fla. 4th DCA 1992).

lying on doctrine must prove that immediate discharge would have followed disclosure of employee's wrongdoing). But as to its application as a defense to a wrongful discharge or denial of severance benefits, outside the *McKennon* context, no Florida court has spoken in a published decision.[6]

Thus, as with any other breach of contract case, the undersigned is left with the task of construing the parties' contract and applying its unambiguous terms to the dispute presented. The applicable language is clear: "[i]n the event you are asked to resign other than for cause, . . . you will be entitled to eighteen [months] of base pay, paid monthly, plus 30% of base pay paid in one lump sum. . . ." Dr. Tomasini was precisely asked to resign other than for cause.

In a case from which applicable legal principles can be derived, *Barakat v. Broward County Housing Authority*, 771 So.2d 1193 (Fla. 4th DCA 2000), a county housing authority employee who had been terminated for cause sued to recover severance pay, and his case was dismissed. The employee was employed pursuant to a Broward County Housing Resolution, which provided that if he, Barakat, "should be terminated, then he will be given severance pay. . . ." *Id.* at 1194. As a result of a conviction for filing false tax returns, Barakat could not continue with his employment and was terminated without severance pay. In reversing the trial court, who had implied "reasonableness" into the parties' contract, it was noted:

> [I]t is a well settled principle of contract law that where the terms of a contract are unambiguous, the parties' intent must be determined from within the four corners of the document. In the absence of ambiguity, the language itself is the best evidence of the parties' intent and its plain meaning controls. Contracts are to be construed in accordance with the plain meaning of the words contained therein. . . . . If terminated, Barakat was entitled to severance pay in the amount due, as if his contract had run its full length.
>
> It is never the role of a trial court to rewrite a contract to make it more reasonable for one of the parties or to relieve a party from what turns out to be a bad bargain. . . . Had the BCHA wanted to provide for severance pay only when Barakat was terminated without cause, it could have made that a requirement in the Resolution.

*Id.* at 1194–95 (citations omitted).

Similarly here, had Mount Sinai wanted to reserve to itself the right to investigate the doctor following a termination, to ascertain whether during his tenure he had committed any acts constituting moral turpitude or gross neglect of duties, and to deny severance benefits on the basis of such after-acquired evidence, Mount Sinai, as the drafter of the amendment, could have done so. It did not, and cannot now avail itself of information gathered during the course of litigation to deny severance benefits to one who was not terminated, at the time, for cause. Thus, Dr. Tomasini is entitled to summary judgment on his claim for severance pay as well as his claim for the 30% lump sum amount.

**2. On Count I of the Complaint, Plaintiff is Entitled to Payment of "Earned Time Off"**

 Mount Sinai has presented no issues of material fact or argument addressing Dr. Tomasini's request for 173.6 hours of "Earned Time Off". As Dr. Tomasini has correctly pointed out, "the payment of accrued leave time is an independent contractual right that the claimant and the

---

**6.** The undersigned notes that it is Mount Sinai which seeks to use the after-acquired doctrine as a shield, and yet Mount Sinai cannot identify any Florida decisional or statutory law which supports such a defense.

employer have agreed to as a *condition* of the claimant's employment." *Marion Corr. Inst. v. Kriegel,* 522 So.2d 45, 47 (Fla. 5th DCA 1988). Annual leave credits are wages and constitute compensation for services performed. *Strasser v. City of Jacksonville,* 655 So.2d 234, 236 (Fla. 1st DCA 1995). Therefore Dr. Tomasini is entitled to summary judgment on this claim of Count I.

## C. Counts I and II of the Counterclaim and the Affirmative Defenses

### 1. There is no Issue of Fact as to Count I of the Counterclaim and the Affirmative Defense for Fraud in the Inducement

■ In Count I of the Counterclaim, for fraudulent inducement,[7] Mount Sinai alleges that Dr. Tomasini retained H & S to prepare a brochure for himself that was submitted to Mount Sinai with Plaintiff's resume. The H & S brochure allegedly contained material misstatements as a result of information provided to H & S by Dr. Tomasini. Furthermore, Mount Sinai maintains it relied upon these misrepresentations to its detriment when it made its hiring decision on May 9, 1999. As a result, Mount Sinai seeks damages consisting of the "finding fee" that it paid to H & S for having hired Dr. Tomasini.

Dr. Tomasini argues that the fraudulent inducement claim is barred by applicable limitations period, the Florida economic loss rule, and/or fails to state a legal claim. Because the Court finds that Mount Sinai cannot establish the elements of its fraudulent inducement claim, the statute of limitations and the economic loss rule arguments are not addressed.

■ To prevail on its claim for fraud in the inducement, Mount Sinai must show: "(1) a misrepresentation of a material fact; (2) knowledge by the person making the statement that the representation is false; (3) intent by the person making the statement that the representation would induce another to rely and act on it; and (4) that the plaintiff suffered injury in justifiable reliance on the representation." *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.,* 842 So.2d 204, 209 (Fla. 3d DCA 2003). All four elements must be shown.[8] Turning to the first element, Mount Sinai insists an issue of fact exists as to whether Dr. Tomasini lied to Clark so that the recruiter in turn could lie to Mount Sinai regarding the circumstances of the doctor's departure from his prior employment. Nonetheless, Mount Sinai fails to cite to any evidence supporting its position that Dr. Tomasini "lied" to the H & S recruiter.[9]

Plaintiff admitted in his deposition as well as on Mount Sinai's application form that he had been discharged by Community Hospital, his previous employer.[10]

---

7. In its opposition memorandum, Mount Sinai focuses on a newly asserted "resume fraud" defense that is not alleged in its Affirmative Defenses or Counterclaim. Mount Sinai maintains that Dr. Tomasini committed "resume fraud" when he allegedly told Clark that he voluntarily left his employment, and therefore such fraud operates as a complete defense to the action for breach of an employment contract. Assuming that defense were even properly before the Court, as noted *infra,* Mount Sinai has failed to provide any evidence that Dr. Tomasini misrepresented to the recruiter that he voluntarily left Community Hospital.

8. Not all four are examined here, since the absence of evidence supporting any one element is fatal to the claim.

9. Contrary to the allegations contained within the Counterclaim, H & S was retained by Mount Sinai and not Dr. Tomasini. H & S acted on behalf of Mount Sinai when it obtained information from the candidates for the CMO position.

10. After Dr. Tomasini was hired, he completed a form application on May 20, 1999. Although admittedly he checked off indicating he had been "discharged or asked to resign,"

While the statements in the brochure suggest that he voluntarily left his former employer, contrary to Plaintiff's own admissions, there is no evidence that Dr. Tomasini provided such misleading information to the recruiter who prepared the brochure. Indeed, the portions of Clark's deposition that are a part of the record do not suggest that Dr. Tomasini misrepresented any information.

In its opposition memorandum, Mount Sinai claims that the recruiter had been told by Dr. Tomasini that the doctor had "voluntarily left" his former employment. A review of the cited deposition transcript reveals that Clark did not make such a statement. Clark took notes of what Dr. Tomasini told him and paraphrased and wrote his impressions of what he was being told. Moreover, Clark stated that Mount Sinai did not instruct him to inquire of any of the candidates whether they had been terminated by their prior employers. Mount Sinai's attempt to hold Dr. Tomasini liable for statements made by its own agent, H & S, in a brochure that the Plaintiff did not see or have an opportunity to correct, is simply too attenuated based on the record before the Court.[11]

■ Turning to the fourth element required for a fraudulent inducement claim, reliance on the brochure cannot be considered justifiable in light of Mount Sinai's own participation in the selection process for the CMO position. Mount Sinai advised H & S that it wanted to perform its own reference calls. Furthermore, Tomasini was not hired until after Mount Sinai's search committee had conducted its own interviews of all the candidates. Thus, the claimed reliance on the brochure is not supported by the record. As Mount Sinai fails to establish justifiable reliance on the alleged misstatements contained in the brochure, for this additional reason it cannot sustain a claim for fraud in the inducement. *See Hillcrest Pac. Corp. v. Yamamura*, 727 So.2d 1053, 1057 (Fla. 4th DCA 1999) (stating there can be no actionable fraud without justifiable reliance).

Accordingly, summary judgment on Count I of the Counterclaim and the defense of fraudulent inducement is appropriate.

### 2. Factual Issues Exist as to Count II of the Counterclaim, for Money Had and Received

■ In response to the undersigned's January 22, 2004 Order requiring Mount Sinai to supply the Court with "a memorandum of law containing citations to applicable authorities that support Count II of the Counterclaim," Mount Sinai conceded there was no cause of action for "Gross Neglect of Duties," and that Count II of its Counterclaim should more properly be considered to state a claim for money

---

Dr. Tomasini provided a reason ("change in administration") that may have been more benign than what had actually transpired. Nonetheless, Defendant does not suggest the "fraud" lies in such incomplete disclosure; rather, that the fraud inheres in the information purportedly given by the doctor to H & S.

11. It is the non-moving party's burden to present evidence to preclude the entry of summary judgment. While Defendant has raised the issue of whether Plaintiff lied to the recruiter in its Statement of Facts, the Court is not required to "scour the record to determine whether there exists a genuine issue of material fact to preclude summary judgment." *L.S. Heath & Son, Inc. v. AT & T Info. Sys. Inc.*, 9 F.3d 561, 567 (7th Cir.1993); *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 n. 7 (5th Cir.1992); *Lawrence v. Wal–Mart Stores, Inc.*, 236 F.Supp.2d 1314, 1322 (M.D.Fla.2002). Mount Sinai was required to "identify specific evidence in the record, and to articulate the 'precise manner' in which that evidence supported [its] claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.1992)). To the contrary here, Defendant's only reference to the record on this issue proved to be wholly inaccurate.

had and received or contract implied in fact. *Watson Clinic, LLP v. Verzosa*, 816 So.2d 832 (Fla. 2d DCA 2002), a case cited by Mount Sinai in its additional briefing, concerns a somewhat factually analogous case, and references that Florida recognizes actions for recoupment. *Id.* at 834 (citing *First State Bank of Fort Meade v. Singletary*, 124 Fla. 770, 169 So. 407 (1936)). In *Watson* the overpaid doctor maintained the medical clinic was estopped from seeking return of salary payments made to him because he had previously advised the clinic of the accounting error, and had been told it was correct. In reversing the trial court, the Second District Court of Appeal found that the facts had not established an estoppel, and that judgment for the clinic should be entered. *Id.* at 835.

Dr. Tomasini received a $67,500 bonus on August 24, 2000, covering his first year of employment. His yearly performance was to be reviewed again during the next evaluation, on June 7, 2001. Nonetheless, on February 5, 2001, Dr. Tomasini accepted another bonus of $83,250. When he received it, he knew it was an error, but he maintains Bruce Perry told him the Compensation Committee had approved it. Bruce Perry does not recall having made that representation.

Thus, material issues of fact exist regarding whether or not Mount Sinai is entitled to a return of the second bonus paid to Dr. Tomasini.

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion (**D.E.67**) is **GRANTED IN PART**. Summary Judgment is entered in favor of Plaintiff as to Counts I and II of the Complaint, and Count I of Defendant's Counterclaim and the Affirmative Defense of Fraudulent Inducement.

Plaintiff's Motion is DENIED with respect to Count II of Defendant's Counterclaim.