979 So.2d 269 (2007)
Gordon WINANS and Kathy Winans, his wife, Appellants,
v.
Jed P. WEBER, M.D., Appellee.
No. 2D06-5581.
District Court of Appeal of Florida, Second District.
December 14, 2007.
*271 Mark C. Menser, Fort Myers, for Appellants.
Henry A. Stein of The Stein Law Group, P.A., St. Petersburg, for Appellee.
STRINGER, Judge.
Gordon and Kathy Winans appeal the final judgment on interpleader which awarded Jed Weber, M.D., the full amount of his bill for medical services rendered. Because the trial court's findings are not supported by the evidence presented at the hearing and because the evidence does not establish that the Winanses waived their rights as third-party beneficiaries under the contract between Dr. Weber and United HealthCare, we reverse and remand for entry of judgment in favor of the Winanses.
The factual context of this case requires some explanation. In mid-2003, Dr. Weber entered into a contract with United HealthCare to be a provider of medical services to United HealthCare's customers. The scope of this contract was stated in the first paragraph:
This agreement applies to you and the services you provide in all of your practice arrangements and for all of your tax identification numbers, except if your services are covered under an agreement between us and a medical group that you are part of.
(Emphasis added.) Subsequent provisions of the contract stated:
You must submit your claims within 90 days of the date of service . . . If your claim . . . is not submitted within these timeframes, you will not be reimbursed for the services, and you may not charge your patient.
* * * *

You will not charge our customers anything for the services you provide, if those services are covered services under their benefits contract, but the applicable co-pay, coinsurance or deductible amount. If the services you provide are denied or otherwise not paid due to your failure to notify us, to file a timely claim, to submit a complete claim, or based on our reimbursement policies and methodologies, you may not charge your patient.

(Emphasis added.) The contract defined "customer" as an "individual[ ] who [is] enrolled in benefit contracts insured or administered by us."
Gordon Winans was involved in an auto accident in April 2003. At that time, Mr. Winans had health insurance through United HealthCare and was a "customer" *272 as that term is defined in the contract between Dr. Weber and United HealthCare. In May 2003, Mr. Winans was referred to Dr. Weber by the Winanses' attorney for treatment for the injuries Mr. Winans sustained in the auto accident. His treatment continued through 2003, 2004, and 2005.
Shortly after Mr. Winans began treating with Dr. Weber, the Winanses' attorney sent Dr. Weber a Letter of Protection ("LOP") concerning the medical bills being incurred by Mr. Winans. This LOP specifically required Dr. Weber to submit bills for Mr. Winans' treatment to Mr. Winans' health insurer "in the event there is available insurance coverage that your office accepts." The LOP stated that if the bills were submitted to the insurance carrier and if those bills were not paid, then the bills would be paid from the proceeds of the settlement.
At some point after Dr. Weber received the LOP, his office stamped the LOP with an addendum which read, in full,
"Jed. P. Weber, M.D., Neurosurgery Consultants, L.L.C." is not contracted with any insurance companies. Therefore, Provider will neither bill, nor accept payment from Health Insurance. Provider will rely on LOP, PIP, MedPay, and if no settlement is reached, the Patient for payment.
Mr. Winans' signature appears below this stamped addendum. The addendum is not dated, and there is nothing in the record showing when the addendum was placed on the LOP or when Mr. Winans signed it.
In keeping with the addendum, Dr. Weber did not submit any bills for Mr. Winans' treatment to United HealthCare. Dr. Weber's bill for his services in treating Mr. Winans was $28,064. It is undisputed that had Dr. Weber submitted Mr. Winans' bills to United HealthCare for payment, he would have received $4,167.15 in full payment for all treatment rendered.
Following the Winanses' settlement of their personal injury case, Dr. Weber sought to be paid $28,064 from the settlement proceeds pursuant to the LOP. The Winanses contended that Dr. Weber was not entitled to any payment because he should have submitted his bills to United HealthCare and because, under his contract with United HealthCare, he was prohibited from collecting from the Winanses any amounts that he should have received under that contract.
When the parties could not amicably resolve the dispute over these funds, the Winanses' attorney paid the disputed funds into the court registry. Dr. Weber and the Winanses then filed competing motions for disbursement of the funds in the court registry. The trial court held an evidentiary hearing on the motions.
At that hearing, Mr. Winans testified that when he first visited Dr. Weber, he told Dr. Weber's office staff that he had United HealthCare insurance. Mr. Winans testified that he was told on several occasions by Dr. Weber's office staff that his bills were being submitted to United HealthCare. Mr. Winans admitted that he signed below the stamped addendum on the LOP, but he testified that he thought that Dr. Weber was still billing United HealthCare because the body of the LOP stated that Dr. Weber was required to bill his health insurance carrier before he would be protected by the LOP. Nowhere did Mr. Winans testify that he discussed the addendum to the LOP or signing the addendum with his attorney. In fact, Mrs. Winans testified that the first their attorney knew of the addendum was in July 2005 when Dr. Weber's bill was submitted to him for payment out of the settlement proceeds.
*273 Dr. Weber did not testify at the hearing. However, his practice manager, Catherine Nicholson, testified that Dr. Weber had two separate companies set up with two separate tax identification numbers. According to her, Dr. Weber treated all of his nonaccident patients under one tax identification number and all of his auto accident patients under a different tax identification number. Nicholson testified that for all of the auto accident cases, the patients were required to sign the addendum that says that Dr. Weber would not accept health insurance. She testified that if a patient refused to sign, Dr. Weber would not treat that patient. Nicholson testified that Dr. Weber had not submitted any of the bills for Mr. Winans' treatment to United HealthCare in reliance on the addendum and that the time had now passed for the bills to be timely submitted for payment. Nicholson denied that she had ever told Mr. Winans that his bills were being submitted to United HealthCare. She did not address whether any other member of the office staff might have told this to Mr. Winans.
On cross-examination, Nicholson admitted that Dr. Weber's contract with United HealthCare stated that it applied to all tax identification numbers and to all practice arrangements. However, she also testified that only Jed Weber, M.D., P.L., was a party to the contract and that Neurosurgery Consultants, LLC, was not a party to the contract.
At the close of the hearing, the trial court found that there was a contract between Dr. Weber and United HealthCare and that it applied to all of the services provided by Dr. Weber under all of his tax identification numbers, thus rejecting Dr. Weber's argument that his separate auto accident practice was not subject to the terms of his contract with United HealthCare. The trial court also found that the contract prohibited Dr. Weber from charging his patients for bills covered under the patients' contracts with United HealthCare. The trial court also found that Mr. Winans was a third-party beneficiary of the contract between Dr. Weber and United HealthCare.
However, the trial court then found that Dr. Weber had explicitly stated that he did not accept health insurance and that he had "chosen not to extend" insurance benefits to his patients. Based on this, the trial court found that Mr. Winans had "cut off" his third-party rights under the contract by signing below the stamped addendum with the advice of counsel. Thus, the trial court found in favor of Dr. Weber and ordered the full amount of the disputed proceeds disbursed to him.
In this appeal, the Winanses contend that the trial court erred in finding that Mr. Winans signed the addendum with the advice of counsel because there is no evidence to support this finding. They also contend that the trial court erred in finding that Mr. Winans' signature constituted a waiver of his rights as a third-party beneficiary of the contract between Dr. Weber and United HealthCare. We agree with both points.
As an initial matter, the Winanses are correct that there is no record evidence to support the trial court's finding that Mr. Winans signed the addendum with the advice of counsel. Mr. Winans did not testify that he ever spoke with his attorney about the matter. Mrs. Winans testified that their attorney did not know about the addendum until after treatment was completed. Dr. Weber did not testify, and his practice manager did not testify on this issue. Therefore, the trial court's finding that Mr. Winans signed the addendum after consultation with and on the advice of counsel is not supported by the evidence in the record.
*274 Turning to the legal arguments, we agree with the Winanses that Dr. Weber did not prove that they waived their rights as third-party beneficiaries under the contract between Dr. Weber and United HealthCare. The supreme court has defined a "waiver" as a voluntary and intentional relinquishment of a known right. Raymond James Fin. Servs., Inc. v. Saldukas, 896 So.2d 707, 711 (Fla.2005). The elements that must be established to prove waiver are the existence at the time of the waiver of a right, privilege, or advantage; the actual or constructive knowledge thereof; and an intention to relinquish that right, privilege, or advantage. Arbogast v. Bryan, 393 So.2d 606, 608 (Fla. 4th DCA 1981) (quoting 22 Fla. Jur.2d, Estoppel & Waiver, § 89). The element of knowledge of the right is critical, and there can be no waiver without knowledge of the existence of the right or privilege to be waived. Gulf Life Ins. Co. v. Green, 80 So.2d 321, 322 (Fla.1955). Similarly, there can be no waiver if the party against whom the waiver is invoked did not know all of the material facts, see Fireman's Fund Ins. Co. v. Vogel, 195 So.2d 20, 24 (Fla. 2d DCA 1967); Alston v. Alston, 960 So.2d 879, 881 (Fla. 4th DCA 2007); or was misled about the material facts, see L.R. v. Dep't of Children & Families, 822 So.2d 527, 530 (Fla. 4th DCA 2002) (holding that there could be no waiver of grandparents' right to seek adoption of grandchildren when DCF had misled the grandparents concerning their rights); cf. Ethridge v. State, 766 So.2d 413, 414 (Fla. 4th DCA 2000) (holding that defendant could not have been found to have waived right to assert a specific defense when he had been specifically told that the defense was not available).
In this case, the trial court properly found that Mr. Winans had rights under the contract between Dr. Weber and United HealthCare. However, the trial court's finding that Mr. Winans had waived those rights is not supported by the evidence because there is no evidence that Mr. Winans had knowledge of his rights when he allegedly waived them. Instead, the evidence shows that Dr. Weber actively misled Mr. Winans in one of two ways. If Mr. Winans' testimony is to be believed, Dr. Weber misled Mr. Winans by having his office staff assure him that Dr. Weber was billing United HealthCare for his treatment in direct contradiction to the addendum. If the testimony presented by Dr. Weber is to be believed, Dr. Weber misled Mr. Winans by falsely telling Mr. Winans that Dr. Weber was not contracted with any health insurance companies. In either event, Mr. Winans' purported waiver of his rights under the United HealthCare contract was not made with knowledge of the material facts. Thus, any alleged waiver would be ineffective to actually waive Mr. Winans' rights under the United HealthCare contract. Accordingly, the trial court erred in finding that Mr. Winans waived his rights and in disbursing the disputed funds to Dr. Weber.
In this appeal, Dr. Weber contends that the trial court did not rule on the issue of waiver, but rather found in his favor on the basis of equitable estoppel. While we do not read the trial court's ruling this way, even if this were so, we would still reverse because the evidence does not support finding an equitable estoppel. The elements that must be established to prove an equitable estoppel are:
(1) the party against whom the estoppel is sought must have made a representation about a material fact that is contrary to a position it later asserts; (2) the party claiming estoppel must have relied on that representation; and (3) the party seeking estoppel must have changed his position to his detriment *275 based on the representation and his reliance on it.
Watson Clinic, LLP v. Verzosa, 816 So.2d 832, 834 (Fla. 2d DCA 2002); see also SourceTrack, LLC v. Ariba, Inc., 958 So.2d 523, 526 (Fla. 2d DCA 2007); Lennar Homes, Inc. v. Gabb Constr. Servs., Inc., 654 So.2d 649, 651 (Fla. 3d DCA 1995). There can be no estoppel when the party seeking the estoppel was aware of the true facts and thus was not misled by the other party's conduct. Watson Clinic, 816 So.2d at 834; Schueler v. Franke, 522 So.2d 904, 906 (Fla. 2d DCA 1988); Hamilton v. Corcoran, 177 So.2d 64, 65 (Fla. 2d DCA 1965); Lennar Homes, 654 So.2d at 652.
Here, Dr. Weber's claim of equitable estoppel fails for three reasons. First, Dr. Weber failed to prove that Mr. Winans made any type of representation about any material fact. Instead, it was Dr. Weber who made the representation about a material fact, and that representation was false. Because estoppel will only lie against the party actually making the representation, Dr. Weber has failed to establish one of the elements of estoppel.
In his brief, Dr. Weber takes the position that Mr. Winans' signature under the addendum constituted a "representation." However, the record does not bear this out. The stamped addendum is simply a statement made by Dr. Weber. While Mr. Winans' signature might be construed to be evidence that he read the statement, there is nothing in the addendum that can be construed to make that signature a representation by Mr. Winans that the addendum is true or that he agreed to it. Had the stamped addendum begun with "I acknowledge that . . ." or "I understand that . . .", then perhaps it would have been possible to construe Mr. Winans' signature as a representation. In the absence of such language, Dr. Weber has no basis for turning the stamped addendum placed on the LOP by his own office staff into a representation made by Mr. Winans.
Second, Dr. Weber cannot rely on equitable estoppel because he himself was aware of the true facts and thus was not misled by any representation by Mr. Winans. The evidence established, and the trial court properly found, that Dr. Weber was aware that he had a contract with United HealthCare that applied to all of his patients who were "customers" of United HealthCare. Despite this, Dr. Weber falsely represented that he was not contracted with any health insurance providers. Dr. Weber cannot seriously contend that he was "misled" by Mr. Winans' conduct when Dr. Weber knew that he had a contract with United HealthCare and knew that Mr. Winans was a "customer" of United HealthCare entitled to the benefits of that contract. Because Dr. Weber was aware of the true facts, he is not entitled to rely on the doctrine of equitable estoppel to extricate him from his own falsehood.
Third, Dr. Weber's equitable estoppel argument flies in the face of the purpose of the doctrine. The primary purpose of the doctrine of equitable estoppel is to "prevent a party from profiting from his or her wrongdoing." Major League Baseball v. Morsani, 790 So.2d 1071, 1078 (Fla.2001). Thus, a party's own wrongful act cannot serve as the basis for a claim of equitable estoppel against another. Barnett & Klein Corp. v. President of Palm Beach  A Condo., Inc., 426 So.2d 1074, 1075 (Fla. 4th DCA 1983); Opler v. Wynne, 402 So.2d 1309, 1311 (Fla. 3d DCA 1981).
Here, Dr. Weber breached his contract with United HealthCare by attempting to bill patients covered by United HealthCare for charges covered by their policies. He also misled his patients concerning the existence *276 of the contract between himself and United HealthCare. Dr. Weber now seeks to use these wrongful acts to estop the Winanses from receiving the benefits they were entitled to under their policy with United HealthCare. Dr. Weber cannot claim detrimental reliance on his own misrepresentations and his own wrongful breach of his contract with United HealthCare.
For these three reasons, Dr. Weber's claim of equitable estoppel fails. Because Dr. Weber established neither waiver nor equitable estoppel, the trial court's finding that Mr. Winans had "cut off" his rights under the contract between Dr. Weber and United HealthCare cannot stand. Accordingly, we reverse the order disbursing the disputed funds to Dr. Weber and remand for disbursement of the funds to the Winanses.
Reversed and remanded for entry of judgment in favor of the Winanses.
WHATLEY and KELLY, JJ., Concur.